Dunkin, Ch.,
delivered the opinion of the Court.
The question referred to the Court of Errors arises out of the third and fourth clauses of the will of Jonathan Davenport, deceased. The Chancellor ruled that under the devise to Catha-rine Davenport she took a fee conditional in the real estate. On-the part of the appellant, it is insisted that she took only a life estate, with a valid remainder to himself as a purchaser under his grandfather’s will. The decision is founded on what is familiarly known as the rule in Shelley's case. All the authorities'admit that a rigid adherence to the letter of this rule would frequently defeat the intention of the testator. “ It is a rule of tenure, which is not only independent of, but generally operates to subvert, the intention.” It must not, therefore, be understood, says Mr. Jarman, that even the technical expression, “heirs of’ the body,” is “ incapable of control or explanation by the effect of superadded expressions, .clearly demonstrating that the testator used those words in some other than their ordinary acceptation, and as descriptive of another class of objects” — (2 Jarm. on-Wills, 300.) Although a difference of opinion exists among Judges as to the word issue, yet, it seems now settled, that un- *572 less restricted by the context, this expression cannot be satisfied by applying it to descendants at a particular period. But if, from superadded expressions, or from the context, or from other parts of the will, it is manifest that'the testator used the term as synonymous with “ children,” or intended to describe a class of persons to take at a particular time, issue will be construed as a word of purchase, and not of limitation. And this rule is equally applicable to every other expression used as synonymous with heirs of the body. Whenever the words “ heirs of the body” would be explained to mean some other class of persons, the same construction is given to the synonyme, and the rule in Shelley’s case does not apply. — (2 Jarm. 281.) It must be conceded that, in the application of these rules, the cases cannot be reconciled. There seems to have prevailed an unceasing conflict between the obligation to observe a technical rule and a solicitude not to defeat the obvious intention of the testator. In England, this struggle has been so manifest, and the discrepancy in the decisions so perplexing, that a special Act of Parliament has been found necessary, (1 Vic. c. 26, s. 29,) which restricts and defines the construction to be given to words in a will importing a failure of issue. But, prior to that Act, if it could be gathered from the will that the testator did not contemplate an indefinite succession of issue, but a class of persons to take at a particular time, this manifest intention was respected and carried into effect. It was sáid, in argument, that the will of Davenport was prepared by a professional gentleman of sagacity and long experience, whose name appears as a witness to the instrument. Be that as it may, if the draughtsman had not before him, he clearly had in his mind, the Act of 1791; which declares the mode of distribution of an intestate’s estate at the time of his death. In the various clauses of the will, the terms issue, children, and heirs, repeatedly occur. When the word heirs is used, it is obviously intended only to express the amplitude of the estate, as in the devise to his sons, “ and their heirs forever.”— In the clause under review, the devise is to his daughter, Catha-rine, “ for and during the term of her natural life; and, at her *573 death, I give, devise, and bequeath the same, absolutely and forever, to” — whom ? Not to her child or children, for she might have none, but to her children, grand-children, or great-grandchildren, as the case might be; or, using the comprehensive and familiar terms of the statute, “ to her lineal descendants.” But, perhaps she might leave none of these ; and the testator proceeds to provide, as, in such case, the statute provides, for distribution among collaterals, where the intestate leaves no lineal descendant. “And in case,” says he, “ she should die without lineal descendants, (one or more,) living at the time of her death, then it is my will that the whole of said real estate revert to my estate and be disposed of as hereinafter directed.”
The statute declared that on the death of an intestate, leaving only brothers and sisters, the estate should be distributable equally amongst them. This was not quite in accordance with the testator’s views. His daughter had two brothers and three sisters, who, in the contingency contemplated, would be entitled to her estate under the statute. But there were two of the sisters whom the testator desired not to partake, as he had already, in his life time, amply provided for them, or, (to use his own expressions,) he had done so “ according to his own intentions and his own notions, and I am, (says he,) or at least, I think I amj the best judge in the matter.” He therefore directs that, in such event, “the property bequeathed to my daughter, (Catharine,) shall be equally divided between my children, James M. Davenport, John G. Davenport, and Aimy Hill; and I give, bequeath, and devise the same to my said three children and their heirs forever, share and share alike the testator thereby modifying the provisions of the statute, and excluding his other two daughters, Maria Louisa McLure and Elizabeth G. Rudd. Is there any rule or decision which demands the destruction of this scheme, and a sacrifice of the manifest purpose of this testator ? Giving to the terms, “ lineal descendants,” exactly the meaning of “ issue,” are there not words restraining the meaning to issue living at the death 1 It is argued that the construction of this devise is concluded by Whitworth vs. Stuckey, (1 Rich. Eq. *574 404.) Certainly that case goes as far, in deference to the decisions in Westminter Hall, as the most tenacious could desire.— And it is somewhat remarkable, as is elsewhere noticed, that the reason for adhering to the technical construction in devises of real estate in the Courts of England, not only does not exist in South Carolina, but the contrary. Admitting, as the English authorities do, that a more liberal rule prevails in bequests of personalty, they justify the distinction on the ground that, by construing the words to import a general failure of issue, it would, in personalty, necessarily render void the gift over, which is to take effect on such contingency; but that this construction, in devises of real estate, would only have the effect of creating an estate tail, on which a remainder may be limited.— (2 Jarm. 362.) But in South Carolina this construction creates a fee conditional, upon which, according to our decisions, a remainder cannot be limited ; and the disinclination to adopt such construction should equally exist in devises of real estate as in bequests of personalty. But the terms of this devise are not the same with those in Whitworth vs. Stuckey, and other words are here superadded, evincing the intention of the testator, which are wanting in that devise. Language of the strictest technical import, as heirs of the body, will not control the construction if the intention be clearly manifested to describe thereby a class of persons to take at a particular period. In such case the intention will prevail. The rule only requires, says Mr. Jarman, a clear indication of intention to that effect. And so, in Ryan vs. Cowley, (Lloyd & Gould, 10,) Lord Chancellor Sugden says of the term issue, it may be employed as a word of limitation, or of purchase, and if, by the context, the testator shows that it is used as synonymous with child or children, he translates his own language, and the Court gives effect to his declared meaning. Using technical expressions, a party is presumed to use them in a technical sense, because every man is presumed to know the law. It has been already remarked, that the use of the term “ lineal descendants,” indicated that the testator probably looked to the scheme of the statute which adopts this pecu *575 liar phrase in providing for the final distribution of an intestate’s estate at the period of his death. But the testator has borrowed other expressions from the same statute, more familiarly known, perhaps, than any other in the statute book. The first canon of .this statute provides for the distribution of the estate between the widow and children, if more than one ; but if only one, the remainder of the estate shall be vested in that one, absolutely forever. Then, in the next canon, the lineal descendants of the intestate shall represent their respective parents, and be entitled, &c. The next provides for the event that the intestate shall not leave “ a child or other lineal descendant” : It is hardly necessary to say that the statute confers an estate in fee simple, or, in its own phrase, “ absolutely forever.” Each canon vests the estate in the persons who, at the death of the intestate, shall answer the description. If the testator had devised the estate to his daughter, for and during the term of her natural life, and at her death, to such persons, absolutely and forever, as would at that time, had it been her own property, be entitled to take her estate according to the statute of distributions, it would be difficult to entertain a doubt as to the meaning of the testator, and scarcely questionable that the persons thus described would take as purchasers. They might be the lineal descendants of his daughter, or her ancestors, or her collateral relations, or even her husband. They would, nevertheless, according to our decisions, be her heirs. But the testator clearly manifests that no indefinite succession was contemplated, and that he merely purposed to describe a class of persons,, who, at the death of his daughter, should take absolutely the estate which he had given to her for life. He has, in the will before us, only varied the language to meet his purpose. He declares, in case his daughter should die without lineal descendants, one or more, living at the time of her death, then, he desires the estate to revert to his estate, and to be disposed of in a different manner than that prescribed by the statute in such event. The testator, therefore, adopts the language of the statute and with the meaning intended by the statute, provided, at the death of his daughter, there *576 were living any lineal descendants, (one or more.) By “ lineal descendants,” tire statute meant .child, grand-child, greatgrand-child, &c,; the testator meant the same.
But, as I have remarked, there are other expressions in this will which do not appear in Whitworth vs. Stuckey, and. which have received judicial construction, as limiting the general terms of this devise. After giving a life estate to his daughter, the testator provides, as follows — “after her death, I give, bequeath and devise the same, absolutely and forever, to her lineal descendants.” These are the expressions used in the first canon of the statute of distributions.
The effect of these words, as declaratory of the intention of the testator, came under the consideration of this Court in Myers vs. Anderson, (1 Strob. Eq. 344). Although that v as a case of personalty, no such distinction is adverted to, and the language of the Court seems too distinct, general and emphatic, to admit of any such restricted interpretation. In that will the words were, (after the gift of a life estate to Mary Brown and Margaret Brooks,) “after the death of the said Mary Brown and Margaret Brooks, to be the absolute property of the issue of their bodies, forever.” “If obliged,” says the Chancellor in the circuit decree, “by the rules of law to extend, in perpetuity, the interests of these legatees which is expressly given for life, and to declare that the interest which is given to their issue, expressly ‘to be then-absolute property,’ is no interest at all, — that the absolute property is not in the issue to whom it is given, but in the mother to whom it is not given, but, on the contrary, from whom it is expressly withheld: if I am obliged by the rule in Shelley’s case to do this, I shall feel that I am sacrificing the intention of the testator, as to which there can be no mistake.” The Chancellor “conformed his decree to the manifest intention of the testator, and declared that Mary Brown and Margaret Brooks took only a life estate, and that upon their deaths, respectively, their issue took as purchasers.” In affirming this decree, the Court of Appeals say, — “ all the au *577 thorities agree that, if the limitation be to the heirs of the body, or issue, and to their heirs, this constitutes them purchasers : as it shews an intention to give them an estate, not inheritable from the first taker, but an original estate inheritable from themselves as a new stock of descent. The authorities also agree that, if the estate limited to the heirs of the body, or issue, be of a quality, or be given to be enjoyed in a way, incompatible with the idea that they are to hold it in indefinite succession (as if it be given to them as tenants in common, or to be equally divided between them); — this takes it out of the rule in Shelley’s case; and the immediate heirs or issue take as purchasers. It appears to the Court that the testator in this case, by the gift to the issue, not only of the property, or slaves, but of the absolute property in them, (a term importing the quantity of interest intended to be given,) has as effectually given them the fee, (so to speak) as if the bequest had been to the issue and their heirs; and that the gift of the absolute property, or fee, rebuts the idea that he intended it to go in an indefinite succession.” '
This doctrine met the approbation of the whole Court, among whom was Chancellor Harper, who had himself decided Whitworth vs. Stuckey, and who, in this decision, saw nothing inconsistent with it. The principles, on which the distinction was placed, are well established principles in relation to real estates, and constitute well recognized exceptions to the rule in Shelley’s case. The language of this will is, if possible, more emphatic. It is not merely to be ‘their absolute property,’ but it is given, in the words of the statute, to them absolutely and forever. This Court is of opinion, in the terms of Myers vs. Anderson, that this is equivalent to a devise to them and their heirs, that the daughter of the testator took only a life estate, and that the defendant, the only child oí his deceased mother, was a purchaser under the will of his grand-father, and that it should have been so declared.
O’Neall, Frost, Withers and Whitner, JJ. and Ward-law, Ch. concurred.
*578 The case having been returned to the Equity Court of Appeals, in that Court the following judgment was pronounced.
Johnston, Ch.
The Court of Errors having determined that the defendant took the real estate, covered by the 3d clause of testator’s will, as purchaser, upon the death of his mother; and their decision to that effect having been returned to this Court; it is ordered that the same be deemed the judgment of this Court upon that point; and that the account which has been ordered be taken with that modification.
This Court, proceeding to deliver its judgment upon the residue of the case, concurs with the Chancellor in so much of his decree as relates to the note given to Stevens.
It, also, concurs with him in his decree relating to the personal estate of the testator, except as to so much thereof as is covered by the 5th clause of his will.
In the 4th clause the direct limitation is to Catharine and her issue. The limitation over, in the latter part of that clause, has been properly held sufficient to convert the issue into purchasers.
But in the 5th clause issue are not mentioned in the direct gift. That is made to Catharine alone: and the limitation over (which is found in the latter part of the fourth clause) cannot have the effect to vest any thing in the issue, unless by implica-cation; which is expressly contrary to Carr vs. Porter, (1 McC. Ch. 60). This difference between the 4th and 5th clauses was overlooked by the Chancellor, from the fact that only the 4th clause was argued, and that very imperfectly. Our opinion is that Catharine took an absolute interest in the personalty given by the 5th clause: and that the same vested in her husband jure mariti; and whatever of it remained at his death, was part of his estate.
It is ordered that the decree be modified as indicated in this judgment and in that of the Court of Errors.
Dunkin and Dargan, CC. concurred.
Wardlaw, Ch. was not present at the hearing in this Court.

Decree modified.